UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **HAROLD E. HILL, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | Case No. 04-CV-0028-CVE-PJC |
| | ) | |
| **THOMAS E. KEMP, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Now before the Court are the motions to dismiss (Dkt. ## 46, 47, 50, and 51) filed by defendants Howard H. Hendrick, in his official capacity as Director of the Oklahoma Department of Human Services; Thomas E. Kemp, Jerry Johnson, and Connie Irby, in their official capacities as Chairman, Vice-Chairman, and Secretary-Member of the Oklahoma Tax Commission; Brad Henry, in his official capacity as Governor of the State of Oklahoma; W. Drew Edmondson, in his official capacity as Attorney General of the State of Oklahoma; and Scott Meacham, in his official capacity as Treasurer of and for the State of Oklahoma,[1] as to all claims brought against them by plaintiffs in this case.  Plaintiffs Harold E. Hill, Margaret R. and William F. McCright, John J. McQueen, Rita J. Moskowitz, and Barbara Santee (collectively, "Motorist Plaintiffs"), and Oklahoma Religious Coalition for Reproductive Choice Education Fund, Inc. ("ORC") challenge the constitutionality of certain Oklahoma statutes relating to the issuance of specialty license plates and seek declaratory and injunctive relief under 42 U.S.C. § 1983 for violations of the First and

---

[1] Robert Butkin held the office of Treasurer at the time the lawsuit was filed and thus was named in the original Complaint (Dkt. # 1) and First Amended Complaint (Dkt. #45).  The office of Treasurer of and for the State of Oklahoma is now held by Scott Meacham.  Because defendant Butkin was sued in his official capacity, Scott Meacham is automatically substituted as party defendant pursuant to Fed. R. Civ. P. 25(d)(1).  The caption shall be amended accordingly.

Fourteenth Amendments to the United States Constitution. Specifically, the Motorist Plaintiffs complain that certain statutes authorizing the issuance of specialty license plates, including those displaying the phrases "Choose Life" or "Adoption Creates Families," infringe their exercise of free speech and the protections accorded by the Due Process and Equal Protection Clauses of the Constitution. ORC further challenges the statutory eligibility requirements for programs desiring to receive funds under the Choose Life Assistance Program which is funded through the specialty plates program.

## I.

Through Okla Stat. tit. 47, §§ 1135.1-1135.6, the Oklahoma legislature has created a process by which the Oklahoma Tax Commission ("OTC") may issue Oklahoma motorists, for an additional payment, any of nearly 100 specialty license plates, including the two at issue here. New specialty license plates - not already authorized by the legislature - may be created ultimately only by legislative amendment.

Of the additional $35 amount paid for the Choose Life plates, eight dollars is deposited into the OTC Reimbursement Fund, $20 is deposited into the Choose Life Assistance Program Revolving Fund ("Choose Life Fund"), and the remaining seven dollars is apportioned among the various school districts, the state's General Revenue Fund, the State Transportation Fund, the counties, cities, and incorporated towns of the State of Oklahoma, and the Law Enforcement Retirement Fund pursuant to Okla. Stat. tit. 47, § 1104. Okla. Stat. tit. 47, § 1135.5(C). The legislature has also established the eligibility criteria for receiving monies from the Choose Life Fund. Okla Stat. tit. 47, § 1104.6. Of the additional $35 amount paid by Oklahoma motorists for the Adoption Creates Families plate, eight dollars is deposited into the OTC Reimbursement Fund, $25 is deposited into

a revolving fund to be used by the Department of Human Services "for the implementation of the Investing in Stronger Oklahoma Families Act specifically for created families," Okla Stat. tit. 47, § 1135.5(B)(22), and the remaining two dollars is apportioned pursuant to Okla. Stat. tit. 47, § 1104. Okla. Stat. tit. 47, § 1135.5(C).

Motorist Plaintiffs allege that they each own automobiles validly registered in the State of Oklahoma, and each seeks a specialty license plate expressing support for choice in family planning. Each went to a local tag agency within the Northern District of Oklahoma and specifically asked to purchase a special license plate expressing support for choice in family planning, but were notified that no such plate exists in Oklahoma. Motorist Plaintiffs assert that over two years ago, the Oklahoma Reproductive Health Coalition, of which plaintiffs Santee and ORC were members, sought passage of an amendment which would have authorized the issuance of such a plate. They further assert that the bill containing this amendment was referred to the Senate Finance Committee on February 4, 2003, but failed to be passed during the first or second regular session after its introduction, and therefore officially died on May 28, 2004.

ORC, which is located in Tulsa, Oklahoma, is a statewide coalition of religious organizations. Its mission is to support a woman's freedom of reproductive choice regardless of her income, culture, race, class, or ethnic origin. It provides various services to women, including both adoption and abortion counseling. Its abortion counseling activities disqualify it for receipt of funds from the Choose Life Fund under Okla. Stat. tit. 47, §§ 1104.6(C)(4) and (D). It alleges that it has applied for such funds but been disqualified on this ground.

Plaintiffs seek a declaration that the statutory scheme underlying the specialty license plates at issue in this case is unconstitutional, and an injunction against any further implementation or

enforcement of the entire specialty license plate program. In the alternative, Motorist Plaintiffs seek a declaration that the practice of allowing a specialty plate expressing one view but not another is unconstitutional, and an injunction against the continued enforcement of the legislation implementing the Choose Life and Adoptions Create Families plates specifically. ORC seeks a declaration that conditioning the receipt of government funds on abstention from certain speech is unconstitutional, and an injunction against the enforcement of Okla. Stat. tit. 47, §§ 1104.6(C)(4) and (D).

Defendants seek to have the claims against them dismissed on the grounds, inter alia, that the Tax Injunction Act, 28 U.S.C. § 1341 ("TIA"), deprives the federal courts of jurisdiction over these claims and that they have immunity from suit under the Eleventh Amendment.[2]

**II.**

The Court must first address any challenge to its jurisdiction. Defendants Kemp, Johnson, and Irby contend that the TIA bars the suit in its entirety. The TIA prohibits federal courts from "enjoining, suspending, or restraining the assessment, levy or collection of any tax under State law where a plain, speedy, and efficient remedy may be had in the courts of such state."[3] 28 U.S.C. §

---

[2] Defendants have also raised questions of venue, standing, and ripeness, but because the Court lacks jurisdiction, it does not reach those issues. ORC does not challenge any funding restrictions associated with the Adoption Creates Families plate.

[3] The TIA would not serve to deprive federal courts of jurisdiction if Hibbs v. Winn, 542 U.S. 2288 (2004), can be read to encompass a suit such as this, where the requested relief would diminish the flow of state revenues. In Hibbs, plaintiffs were attacking a tax credit so that the impact of their winning the suit would have been to return money to the state treasury rather than to take it away. The Court found the TIA did not bar federal court jurisdiction. Id. The Hibbs exception to the TIA applies only where (1) a third party (not a tax payer) files suit, and (2) the suit's successes will enrich, not deplete, the government entity's coffers. Id. at 2288-90; see also Henderson v. Stalder, 407 F.3d 351, 359 (5th Cir. 2005). Therefore, although Motorist Plaintiffs' claims meet the first prong for this exception, an

1341. Plaintiffs in this case have asked the Court to enjoin the collection of certain assessments prescribed by state law related to specialty license plates, as well as to enjoin the enforcement of certain laws disbursing the funds so collected. Although the TIA is not a bar to jurisdiction over the claims related to disbursement, it may be a bar to jurisdiction over any challenge to the collection of the assessments. Accordingly the Court must first determine whether the extra amounts charged for specialty plates constitute taxes, for the purposes of the statute, or whether they are merely regulatory fees.

**A.**

Whether a state assessment is a tax or a regulatory fee, for the purposes of the TIA, is a question of federal law. Marcus v. Kansas, Department of Revenue, 170 F.3d 1305, 1311 (10th Cir. 1999). The label given by a state is not dispositive of the issue of whether an assessment or other charge is a tax for the purposes of the Act. Id. "The critical inquiry focuses on the purpose of the assessment and the ultimate use of the funds." Id. The Tenth Circuit has adopted the distinction between taxes and fees laid out by the Fifth Circuit:

> The classic tax sustains the essential flow of revenue to the government, while the classic fee is linked to some regulatory scheme. The classic tax is imposed by a state or municipal legislature, while the classic fee is imposed by an agency upon those it regulates. The classic tax is designed to provide a benefit for the entire community, while the classic fee is designed to raise money to help defray an agency's regulatory expenses.

Marcus, 170 F.3d at 1311 (quoting Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss., 143 F.3d 1006, 1011 (5th Cir. 1998)); see also Henderson, 407 F.3d at 356. The Fourth Circuit has further clarified that "[a] tax is generally a revenue-raising measure, imposed by a legislative body,

---

injunction against the license plate program's operation would reduce state revenues and thus fails to meet the second prong.

5

that allocates revenue 'to a general fund, and [is] spent for the benefit of the entire community,' [while a] user fee . . . is a 'payment[ ] given in return for a government provided benefit' and is tied in some fashion to the payor's use of the service." Marcus, 170 F.3d at 1311 (quoting Folio v. City of Clarksburg, W. Va., 134 F.3d 1211, 1217 (4th Cir. 1998)); see also Neinast v. Texas, 217 F.3d 275, 278 (5th Cir. 2000) (characterizing fees as charges imposed "(1) by an agency, not the legislature; (2) upon those it regulates, not the community as a whole; and (3) for the purpose of defraying regulatory costs, not simply for general revenue-raising purposes").

Here, first, although the fees for Oklahoma specialty plates are collected by the OTC, they are set directly by the legislature. Second, although the extra assessments for specialty license plates are paid only by a subset of license plate purchasers as would support the argument that the charges are imposed "only upon those [the scheme] regulates" and therefore constitute fees, all but eight dollars of each $35 assessment is used to benefit the community as a whole. That $27 of each $35 assessment is completely unrelated to the administration of motor vehicle licensing and registration law underscores the revenue raising purpose of the statutory scheme. The argument that revenue from the specialty plate assessments does not serve the general community welfare because it is earmarked for specially eligible recipient organizations is unpersuasive because the appropriate focus is not upon where the funds are eventually deposited, but upon the purpose of the assessment and upon the eventual use to which the funds are put. The Oklahoma legislature designated that the specialty license plate assessments (above the $8 handling charge) be used for a wide range of purposes, including education, wildlife conservation, and state, city, and county road and highway maintenance, as well as, in the case of these two particular plates, adoption support. None of these purposes is regulatory as to the purchasers of specialty plates, and although plaintiffs' view of the

public benefit served by these expenditures might differ from that of the Oklahoma legislature, it does not transform the extra assessments into fees.

Plaintiffs cite Marcus for the proposition that "special license plate fees did not constitute a tax for the purposes of the Tax Injunction Act." Plaintiffs' Response (Dkt. # 56) at 14. However, although the Tenth Circuit in Marcus ultimately found the extra assessment for disabled parking placards to be a regulatory fee rather than a tax, the purpose and ultimate use of that assessment is easily distinguished from the purpose and use of the extra assessments in this matter. The Kansas statutory scheme under consideration in Marcus expressly provided that the assessment be used primarily to cover the administration costs of the motor vehicle registration laws. Id. at 1311. Here, of the additional $35 assessment at issue in the case of the Choose Life plate, only $8 is being used to pay expenses incidental to administering motor vehicle laws. The majority ($20) is a legislatively designated amount, contributed to a legislatively established fund created to assist organizations that provide services to pregnant women committed to placing their children for adoption. Okla. Stat. tit. 47, §§ 1135.5(B)(23) and 1135.5(C). The legislature even established the eligibility criteria for receiving monies from the Choose Life Fund. Okla Stat. tit 47, § 1104.6. The remainder goes into legislatively established general funds, clearly unrelated to the administration of motor vehicle registration laws.

Similarly, the majority of the additional amount paid by Oklahoma motorists for the Adoption Creates Families plate is required, by statute, to be deposited into a revolving fund to be used by the Department of Human Services "for the implementation of the Investing in Stronger Oklahoma Families Act specifically for created families." Okla Stat. tit. 47, § 1136.81.

7

Even though eight dollars of each $35 extra assessment is apportioned to the OTC for the administration of motor vehicle registration laws, and is therefore regulatory in nature, the vast majority of each assessment goes either to a specially-legislated fund unrelated to motor vehicle registration or is distributed among legislatively established general funds unrelated to motor vehicle laws. Accordingly, the Court finds that the amounts collected for the specialty plates in this case are taxes rather than regulatory fees.

**B.**

Because the Court has found the assessments at issue to constitute taxes rather than regulatory fees, it must now turn to the question of whether a "plain, speedy and efficient remedy may be had" in Oklahoma courts. 28 U.S.C. § 1341. "The Supreme Court has specifically held that the words 'plain, speedy and efficient remedy' are to be given a purely procedural interpretation. A state remedy is adequate if it meets 'certain minimal procedural criteria,' which include an opportunity to raise the desired legal objections with the eventual possibility of Supreme Court review of that claim." Brooks v. Nance, 801 F.2d 1237, 1240 (10th Cir. 1986) (citing Carrier Corp. v. Perez, 677 F.2d 162, 165-66 (1st Cir.1982) (quoting Roswell v. LaSalle National Bank, 450 U.S. 503, 514 (1981) (upholding state court refund procedure because it "provides the taxpayer with a 'full hearing and judicial determination' at which she may raise any and all constitutional objections to the tax")).

The Tenth Circuit has held that, for purposes of section 1341, Oklahoma provides an adequate remedy to challenge the lawfulness of its taxing policies and practices. Brooks, 801 F.2d at 1240 (citing Cities Service Gas Co. v. Oklahoma Tax Commission, 656 F.2d 584, 587-88 (10th Cir. 1981), and Bunte Candies, Inc. v. Cartwright, 508 F. Supp. 229, 236 (W.D. Okla.1981)).

Taxpayers may apply for a hearing before the OTC to challenge any incorrect assessment of taxes. Okla. Stat. tit. 68, § 207(c). Decisions of the OTC may be appealed directly to the Supreme Court of Oklahoma. Okla. Stat. tit 68, § 225(A). Alternatively, a taxpayer may pay the disputed tax and institute an action in any state court having jurisdiction over the parties and the subject matter. Okla. Stat. tit. 68, § 226. Taxpayers also have the option of applying for injunctive and declaratory relief in the Oklahoma state courts. Okla. Stat. tit. 12, §§ 1397, 1651-1657. Moreover, federal civil rights claims may be brought in the state court system. See, e.g., Willbourn v. City of Tulsa, 721 P.2d 803, 805 (Okla. 1986) (section 1983 available in state court even though state remedy time-barred). For these reasons, the Court finds that Motorist Plaintiffs have a plain, speedy, and efficient remedy in the state courts similar to that sought here.

Because the assessments at issue are taxes, and a plain, speedy, and efficient remedy may be had in Oklahoma courts for any rights violation caused by the imposition of such taxes, the TIA bars this Court's jurisdiction over any claims related to the portion of the statutory scheme that authorizes the issuance of the specialty plates. This jurisdictional bar applies with respect to all plaintiffs. For these reasons, the first, second, third, and fourth claims for relief of plaintiffs' First Amended Complaint (Dkt. # 45) must be **dismissed.** Because the fifth and sixth claims for relief involve the disbursement of funds rather than the collection of funds, the Court finds that the TIA does not bar the Court's jurisdiction as to them.

### III.

As to the remaining claims, defendants also argue that they have immunity from suit under the Eleventh Amendment. The Eleventh Amendment provides:

9

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State.

The United States Supreme Court has interpreted the Eleventh Amendment to apply to federal question suits against a state brought by its own citizens. Idaho v. Coeur d'Alene Tribe, 521 U.S. 261, 267-68 (1997). There are exceptions to Eleventh Amendment immunity, but plaintiffs rely instead on the doctrine set forth in Ex parte Young, 209 U.S. 123 (1908). "Although citizens may not generally sue states in federal court under the Eleventh Amendment, the Ex parte Young doctrine has carved out an alternative, permitting citizens to seek prospective equitable relief for violations of federal law committed by state officials in their official capacities." Lewis v. New Mexico Dep't of Health, 261 F.3d 970, 975 (10th Cir. 2001) (citing Ex parte Young, 209 U.S. at 159-60).

The Tenth Circuit has outlined a four-part test for application of the Ex parte Young exception: (1) the plaintiff is suing state officials, with an enforcement connection to the challenged statute, rather than the state itself; (2) the plaintiff has alleged a non-frivolous violation of federal law; (3) the plaintiff seeks prospective equitable relief, rather than retroactive monetary relief from the state treasury; and (4) the suit does not implicate "special sovereignty interests." Harris v. Owens, 264 F.3d 1282, 1290-94 (10th Cir. 2001); Elephant Butte Irrigation Dist. of N. M. v. Dep't of the Interior, 160 F.3d 602, 609 (10th Cir. 1999). In this case, plaintiffs have alleged a non-frivolous violation of their constitutional right to free speech under the First and Fourteenth Amendments. The Tenth Circuit has clarified that a court assessing this factor "need only determine whether Plaintiffs state a non-frivolous, substantial claim for relief against state officials that does not merely allege a violation of federal law 'solely for the purpose of obtaining jurisdiction,'" and

10

that the inquiry does not go to the merits of plaintiffs' claim. Elephant Butte, 160 F.3d at 610 (quoting Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 690 n.10 (1949)); see also Harris, 264 F.3d at 1289. Also, plaintiffs seek prospective equitable relief: specifically, injunctive relief prohibiting defendants from enforcing certain Oklahoma statutes that they assert unconstitutionally restrict their speech. Thus, there remain two issues: (1) whether the state officials named as defendants have a sufficient enforcement connection with the challenged statutes to invoke the Ex parte Young exception; and (2) whether any "special sovereignty interest" is implicated by ORC's claims.

**A.**

Defendants Hendrick, Kemp, Johnson, and Irby do not dispute a sufficient enforcement connection to the statute for the purposes of the Ex parte Young exception. The Court agrees that there is a sufficient connection with respect to these defendants. Defendants Meacham and Henry each argue that they are entitled to Eleventh Amendment immunity because they lack sufficient enforcement connection to the challenged statutes.[4] "The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists." Ex parte Young, 209 U.S. at 157.

Defendant Henry, as Governor of Oklahoma, is required by the Oklahoma Constitution to "cause the laws of the State to be faithfully executed." Okla. Const. art. 6, § 8. The connection is

---

[4] Plaintiffs do not oppose defendants' motion to dismiss W.A. "Drew" Edmondson (Attorney General for the State of Oklahoma) as a party defendant in this case on the ground of Eleventh Amendment immunity. See Plaintiffs' Response (Dkt. # 56), at 2 n.2. Accordingly, ORC's claims against defendant Edmondson are dismissed on this ground.

11

"not tangential," and is sufficient to divest him of Eleventh Amendment immunity. Reproductive Services v. Keating, 35 F. Supp. 2d 1332, 1334 (N.D. Okla. 1998) (citing Allied Artists Pictures Corp. v. Rhodes, 473 F. Supp. 560, 568-69 (S.D. Ohio 1979), aff'd, 679 F.2d 656 (6th Cir. 1982)); see also Harris, 264 F.3d at 1290 (Colorado Governor not entitled to Eleventh Amendment immunity in connection with enforcement of Colorado's Medicaid law). Accordingly, the Court finds that defendant Henry is not entitled to Eleventh Amendment immunity on this ground.

Defendant Meacham has a direct connection to the Choose Life Fund statute in that the state treasury is required, by the statute, to create the fund, and to maintain it as a continuing fund. Okla. Stat. § 1104.6(B). However, as Treasurer, he has no direct enforcement connection with the challenged portions of that statute, sections 1104.6(C)(4) and (D). In fact, if he were to be enjoined from enforcing his portion of the statute, plaintiff ORC would be unable to claim the relief it seeks, because there would be no fund from which it could receive money, even if it were eligible. For this reason, the Court finds that defendant Meacham is entitled to Eleventh Amendment immunity on this ground as to ORC's claims based on Okla Stat. tit. 47, §§ 1104.6(C)(4) and 1104.6(D).

Accordingly, the Court finds that, although defendants Henry, Hendrick, Kemp, Johnson, and Irby have sufficient enforcement connection to the remaining challenged statutes, ORC's claims should be **dismissed as to defendant Meacham,** on the ground of Eleventh Amendment immunity because he lacks a sufficient enforcement connection.

**B.**

"Because of the important interests of federalism and state sovereignty implicated by the Ex parte Young doctrine, the rule has its limits." ANR Pipeline Company v. LaFaver, 150 F.3d 1178, 1188 (10th Cir.1998). The Ex parte Young doctrine will not apply where the requested relief could

be said "impermissibly [to] intrude upon the state's dignity and status as a sovereign government." Harris, 264 F.3d at 1293. "Forms of prohibited relief have included money paid from the public treasury, Edelman v. Jordan, 415 U.S. 651, 663 (1974), and a quiet title action, Coeur d'Alene Tribe, 521 U.S. at 281-82." Nelson v. Geringer, 295 F.3d 1082, 1098 (10th Cir. 2002). It is uncontroverted that the taxing power is a core sovereignty interest. See ANR Pipeline, 150 F.3d at 1193 ("Congress has made it clear in no uncertain terms that a state has a special and fundamental interest in its tax collection system."). Similarly, "an attempt to force the allocation of state funds implicates core sovereign interests." Barton v. Summers, 293 F.3d 944, 951 (6th Cir. 2002) (dealing with the allocation of tobacco settlement proceeds).

The Tenth Circuit has recognized an exception to the rule that a state's spending power is one of its core sovereign interests in the case of welfare programs at least partially funded by the federal government. See Joseph A. ex rel. Corrine Wolfe v. Ingram, 275 F.3d 1253, 1260-61 (10th Cir. 2002) ("a state's interest in administering a welfare program at least partially funded by the federal government is not such a core sovereign interest as to preclude the application of Ex parte Young.") (quoting J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1287 (10th Cir. 1999)). Further, although the Tenth Circuit, in addressing essentially the same facts as the Sixth Circuit in Barton, concluded that the Eleventh Amendment did not bar smokers' suit against the State of Colorado for disposition of tobacco settlement funds, it emphasized that the funds at issue had not yet been received by the state and that plaintiffs sought prospective relief in the form of an injunction preventing deposit of the funds into the state treasury on the grounds that the smokers had a legal right to a portion thereof. Harris, 264 F.3d at 1291-92. There is no federal funding or competing

property right that would so serve to compromise the state's sovereign spending power in this case.

Plaintiffs argue that the State's spending power is not implicated here because ORC seeks only to strike the eligibility criteria in section 1104.6 which it perceives to impose unconstitutional limitations on the receipt of government funds. Plaintiffs' Response (Dkt. # 56) at 15.   However, "the Supreme Court's 'unconstitutional conditions' jurisprudence has said that the state may exercise its power to spend in order to discourage protected activity." R.J. Reynolds Tobacco Co. v. Bonta, 272 F. Supp. 2d 1085, 1109 (E.D. Cal. 2003) (citing Maher v. Roe, 432 U.S. 464 (1977) (holding that the government "may make a value judgment favoring childbirth over abortion, and . . . implement that judgment by the allocation of public funds"), and Rust v. Sullivan, 500 U.S. 173, 192-93 (1991) (sustaining a prohibition on abortion-related advice by recipients of federal funds designated for family-planning counseling)).  "A refusal to fund protected activity, without more, cannot be equated with the imposition of a 'penalty' on that activity. There is a basic difference between direct state interference with a protected activity and state encouragement of alternative activity consonant with legislative policy." Rust, 500 U.S. at 193.  "The government is not denying a benefit to anyone, but is instead simply insisting that public funds be spent for the purposes for which they were authorized."[5]  Id. at 196.  Because the requested relief would interfere with the

---

[5] Plaintiffs, also citing Rust, argue that "unconstitutional conditions" result from "situations in which the Government has placed a condition on the recipient of the subsidy rather than on a particular program, or service, thus effectively prohibiting the recipient from engaging in the protected conduct outside the scope of the federally funded program." Id. at 197. However, the Court in Rust clarified that, as long as there were no limitation on an individual's freedom to participate in such protected activity outside the bounds of the recipient program, there is no First Amendment violation.  Id.

state's spending power, and because that power is a special sovereignty interest, <u>Ex parte Young</u> is not applicable; this suit is barred by the Eleventh Amendment.[6]

## VI.

**IT IS THEREFORE ORDERED** that defendants' motions to dismiss (Dkt. ## 46, 47, 50, and 51) are hereby **granted**. The first, second, third, and fourth claims for relief in plaintiffs' First Amended Complaint are **dismissed** as to all defendants because the Court's jurisdiction is barred by the Tax Injunction Act. The fifth and sixth claims for relief in plaintiffs' First Amended Complaint are **dismissed** as to all defendants because the Court's jurisdiction is barred by the Eleventh Amendment.

**DATED** this 16th day of August, 2005.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[6] "Once effectively raised, the Eleventh Amendment becomes a limitation on [the Court's] subject-matter jurisdiction, and we may not then assume 'hypothetical jurisdiction' to reject a plaintiff's claim on the merits." <u>Harris</u>, 264 F.3d 1288. For this reason, the Court does not reach defendants' challenges to plaintiffs' claims on their merits.

15