**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **HAROLD E. HILL, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Case No. 04-CV-0028-CVE-PJC |
| ) | |
| **THOMAS E. KEMP, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**OPINION AND ORDER**

Now before the Court are Defendants Governor Brad Henry and Department of Human Services Director Howard Hendrick's Motion to Dismiss or in the Alternative to Stay this Case Pending the United State Supreme Court's Decision to Grant Certiorari Review (Dkt. # 136), and Defendants Kemp, Johnson and Irby's Motion to Dismiss for Lack of Jurisdiction with Brief (Dkt. # 135). The parties remaining before the Court as to counts five and six of the amended complaint are plaintiff Oklahoma Religious Coalition for Reproductive Choice Education Fund, Inc. ("ORC") and defendants Thomas E. Kemp, Chairman of the Oklahoma Tax Commission ("OTC"), Jerry Johnson, Vice-Chairman of OTC, Connie Irby, Secretary-Member of OTC, (collectively "Tax Officials"), Governor Brad Henry ("Governor Henry"), and Department of Human Services Director Howard Hendrick ("Director Hendrick"). See Dkt. # 134, at 1 n.1. Defendants move to dismiss counts five and six of the amended complaint for lack of subject matter jurisdiction, improper venue, and failure to state claims upon which relief can be granted. See Fed. R. Civ. P. 12(b)(1), 12(b)(3), and 12(b)(6). For the reasons set forth below, the Court finds that Tax Officials and Governor Henry should be dismissed, with Director Hendrick remaining as the sole defendant.

## I. Background

Oklahoma has enacted statutes authorizing the sale of specialty license plates. One of the license plates currently available for purchase by Oklahoma motorists bears the phrase "Choose Life." OKLA. STAT. tit. 47, § 1135.5(B)(23). This plate costs $35 in addition to the normal licensing charges. Id. § 1135.5(C). Of the $35 charge, $8 is directed to the Tax Commission Reimbursement Fund; $20 is directed to "a revolving fund for the Department of Human Services [("DHS")] to be designated the Choose Life Assistance Program" (the "Fund"), id. §1104.6(B); and the remaining $7 goes to school districts and other state funds. By statute, "[a]ll monies accruing to the credit of the [F]und are appropriated and shall be distributed at the beginning of each fiscal year in a pro rata share to all nonprofit organizations that provide services to the community that include counseling and meeting the physical needs of pregnant women who are committed to placing their children for adoption." Id. To receive disbursements from the Fund, an applicant organization must submit an affidavit verifying, among other things, that the organization "is not involved or associated with any abortion activities, including counseling for or referrals to abortion clinics, providing medical abortion-related procedures, or pro-abortion advertising." Id. § 1104.6(C)(4); see also id. § 1104.6(D).

Plaintiff ORC is a "statewide coalition of Christian, Jewish, and other religious faiths supporting choice in family planning, regardless of income, culture, race, class, gender or ethnic origin." Dkt. # 45, at 5. ORC provides services "to assist pregnant women who wish to engage in choice in family planning." Id. at 6. These services include adoption and abortion related counseling, referrals, and financial assistance. Id. In each of the last three years, ORC has applied for funding pursuant to section 1104.6 for the purpose of (a) creating a program that would provide

2

direct support to pregnant women who have decided that adoption is the appropriate option, and (b) supporting counseling and associated training about adoption as a family planning option. Dkt. # 140, at 10. DHS has rejected ORC's application each time. Dkt. # 141, at 1. Accordingly, ORC alleges in claims five and six of the amended complaint that the eligibility criteria set forth in subsections (C)(4) and (D) of section 1104.6 violate the First and Fourteenth Amendments by unconstitutionally conditioning state funding on abstention from privately-funded speech and impermissibly discriminating among otherwise similarly-situated non-profit organizations. Dkt. # 45, at 43-44.

## II. Relevant Procedural History

On August 16, 2005, the Court entered an Opinion and Order (Dkt. # 72) granting defendants' initial motions to dismiss the amended complaint. The Court dismissed claims one through four on the ground that the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, "bar[red] this Court's jurisdiction over any claims related to the portion of the statutory scheme that authorizes the issuance of the specialty plates." Dkt. # 72, at 9. The Court further held that, "[b]ecause the fifth and sixth claims for relief involve the disbursement of funds rather than the collection of funds, the Court finds that the TIA does not bar the Court's jurisdiction as to them." Id. The Court also dismissed the fifth and sixth claims pursuant to the Eleventh Amendment. It held that, because the requested relief would interfere with the state's spending power, and because that power is a special sovereignty interest, the Ex parte Young exception to Eleventh Amendment immunity did not apply. The Court's decision was appealed to the Tenth Circuit.

On March 6, 2007, the Tenth Circuit affirmed this Court's dismissal of claims one through four. It reversed dismissal of claims five and six, however, on the ground that the prospective relief

sought in the amended complaint falls within the scope of Ex parte Young and is not barred by the Eleventh Amendment. Hill v. Kemp, 478 F.3d 1236 (10th Cir. 2007). The Tenth Circuit clarified the Tenth Circuit law regarding the Ex parte Young exception to sovereign immunity. It held:

> to the extent that our decision in ANR Pipeline [v. Lafaver, 150 F.3d 1178 (10th Cir. 1998)] read [Idaho v.] Coeur d'Alene [Tribe of Idaho, 521 U.S. 261 (1997)] as requiring federal courts [to] examine whether the relief sought against a state official implicates special sovereignty interests, we recognize today that Verizon Maryland[, Inc. v. Public Serv. Com'n of Maryland, 535 U.S. 635 (2002)] abrogated this step. Instead, the Supreme Court has instructed that we are to proceed immediately in every case to that straightforward [or so one might hope] inquiry whether the relief requested is properly characterized as prospective or is indeed the functional equivalent of impermissible retrospective relief.

Id. at 1259 (quotations and internal citations omitted). With respect to this case, the Circuit held that the relief sought in the amended complaint is properly characterized as prospective. The relief sought includes: (i) a declaration that prohibiting the distribution of monies from the Fund based on abortion-related speech is unconstitutional, (ii) an injunction prohibiting enforcement of subsections (C)(4) and (D) of OKLA. STAT. tit. 47, § 1104.6, which prohibit distribution to organizations like ORC, and (iii) severance of those subsections from the remainder of the statute. Id. The Circuit explained: "Viewing the facts in the light most favorable to ORC, we are unable to conclude that, were ORC to prevail, Oklahoma's specialty license plate program would be any less financially lucrative for the State, or that the State would be inhibited in any of its funding options, including its decision to collect and spend revenues in aid of adoption activities through the Choose Life Assistance Program." Id. at 1260.

The Tenth Circuit limited its holding to the claims for injunctive and declaratory relief set forth in the amended complaint. It noted,

> should the facts developed in discovery take the case in a direction different from that suggested by the complaint, the trial court remains free to revisit the

>applicability of the Eleventh Amendment, whether at summary judgment or thereafter. That is, defendants remain free, as discovery progresses, to try to establish facts suggesting that granting ORC the relief it requests would operate to reduce the amount of funds flowing to the state Treasury or otherwise constitute something functionally equivalent to a retrospective judgment.

Id. at 1262. Thus, the Circuit concluded that "[f]or our current purposes . . . th[e] litigation may proceed on the basis of plaintiffs' amended complaint." Id. The Circuit remanded claims five and six to this Court on April 13, 2007.[1] See Dkt. # 85.

Defendants now move to dismiss ORC's remaining claims pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(3), and 12(b)(6). Tax Officials, Governor Henry, and Director Hendrick assert numerous arguments, including lack of Article III standing, sovereign immunity, mootness, failure to state a claim, and improper venue. The Court begins with defendants' challenges to subject matter jurisdiction.

### III. Standard of Review

Federal courts are courts of limited jurisdiction and, as the party seeking to invoke federal jurisdiction, the plaintiff bears the burden of proving that jurisdiction is proper. See Southway v. Cent. Bank of Nigeria, 328 F.3d 1267, 1274 (10th Cir. 2003). A court lacking jurisdiction "cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974). Motions to dismiss under Fed. R. Civ. P. 12(b)(1) "generally take one of two forms. The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to

---

[1] This Court has reserved, until the summary judgment stage, ruling on the functional equivalency and waiver issues left open by Hill, 478 F.3d at 1262 n.35. See Dkt. # 131.

5

challenge the factual basis upon which subject matter jurisdiction rests." Merrill Lynch Bus. Fin. Servs, Inc. v. Nudell, 363 F.3d 1072, 1074 (10th Cir. 2004) (internal citation and quotations omitted). Here, defendants have facially attacked the sufficiency of the complaint's allegations as to the existence of subject matter jurisdiction. In analyzing such motions to dismiss, the Court must presume all of the allegations contained in the complaint to be true. Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002); Holt v. United States, 46 F.3d 1000, 1002-03 (10th Cir. 1995). This is the same standard of review applicable to motions arising under Fed. R. Civ. P. 12(b)(6). See Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007).

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief can be granted. The factual allegations within the claim "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1965 (2007) (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 1969. For purposes of making the dismissal determination, a court must accept all the well-pleaded allegations of the claim as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant. Id. at 1965; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee County Bd. of County Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001) (citations omitted).

### IV.  Standing

Tax Officials, Governor Henry, and Director Hendrick assert that ORC lacks standing to bring its claims.  Article III restricts federal courts to the adjudication of "cases or controversies." U.S. CONST. art. III, § 2, cl. 1.  "The standing inquiry ensures that a plaintiff has a sufficient personal stake in a dispute to ensure the existence of a live case or controversy which renders judicial resolution appropriate." Tandy v. City of Wichita, 380 F.3d 1277, 1283 (10th Cir. 2004); see also Allen v. Wright, 468 U.S. 737, 750-51 (1984).  To establish Article III standing, a plaintiff must allege that (1) he or she has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of defendants; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by the relief requested.  Tandy, 380 F.3d at 1283; Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180-81 (2000).  The party seeking to invoke federal jurisdiction bears the burden of establishing all three elements of standing.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  If the plaintiff fails to allege the elements of injury, causation, and redressability as to each form of requested relief, the plaintiff has no standing under Article III to assert his or her claims.  Tandy, 380 F.3d at 1284.  Article III standing is determined as of time at which the complaint is filed.  Nova Health Systems v. Gandy, 416 F.3d 1149, 1155 (10th Cir. 2005).

Tax Officials argue that ORC does not have Article III standing as to them because ORC's alleged injury will not be redressed by its requested relief.  ORC seeks: (i) a declaration that subsections (C)(4) and (D) of OKLA. STAT. tit. 47, § 1104.6 are unconstitutional, (ii) an injunction prohibiting enforcement of subsections (C)(4) and (D), and (iii) severance of subsections (C)(4) and

(D) from the remainder of the statute. Dkt. # 45, at 44-45. Tax officials argue that an injunction against them would be "meaningless," as they have "no authority to cause, make or insure the acts of DHS in its disbursement of funds. . . . The power over disbursements of funds lies not with the Treasurer or OTC (or for that matter the Governor)." Dkt. # 142, at 2. According to Tax Officials, the power over disbursements from the Fund "resides with DHS, a constitutionally created agency of the State of Oklahoma." Id.

DHS is a state agency established by Article XXI of the Oklahoma Constitution. Freeman v. State ex rel. Dep't of Human Servs., 145 P.3d 1078, 1079 (Okla. 2006). DHS maintains and oversees all monies deposited into the Fund. See OKLA. STAT. tit. 47, § 1104.6(B) ("There is hereby created in the State Treasury a revolving fund for the Department of Human Services to be designated the Choose Life Assistance Program."). While Tax Officials have a statutory duty to administer the Vehicle License and Registration Act, "to promulgate all necessary rules . . . to carry this act into effect and to enforce the provisions thereof[,]" id. § 1149, and to deposit monies for the Fund into the Oklahoma Treasury, id. § 1104.6(A), they have no control over disbursements from the Fund. Section 1104.6(C) provides that any organization requesting monies from the Fund must submit an application to DHS, which determines whether the organization is eligible.

Further, this Court finds that Tax Officials could not interfere with a disbursement decision even if desired because, as noted by Tax Officials, "OTC's specific powers end once the funds are placed with the Treasurer." Dkt. # 142, at 3. Oklahoma state officials and agencies possess only those powers specifically granted or necessarily implied. Marley v. Cannon, 618 P.2d 401, 405 (Okla. 1980); see Okla. Tax. Comm'n v. Fotinberry Co., 207 P.2d 301, 304 (Okla. 1949) (noting that state officials and agencies have "powers expressly given by statute" and "by implication, such

additional powers as are necessary for the due and efficient exercise of the powers expressly granted, or as may be fairly implied" (internal quotation marks and citation omitted)). Section 1104.6 plainly vests the power over disbursements from the Fund with DHS. The fact that Tax Officials generally are "charged with enforcing the State's Vehicle License and Registration Act," Hill, 478 F.3d at 1239, does not mean that they control disbursements under section 1104.6.

ORC does not argue to the contrary. Instead, ORC contends that if it prevails on the merits, it will be eligible to receive disbursements from the Fund, notwithstanding its choice to engage in separately financed abortion-related activities. Dkt. # 140, at 31. Without citation to supporting authority, ORC alleges that this relief is all that is required "for complete redress" of the injuries alleged in claims five and six. Id. ORC further alleges that "whether the state ultimately concludes that ORC in fact is eligible for a disbursement from the Fund" is irrelevant. Id.

The Court finds that ORC's contention overlooks one important aspect: how "a judgment against these defendants would redress its injury." Nova Health Sys., 416 F.3d at 1159. A judgment against Tax Officials would not result in disbursement of government funds to otherwise eligible recipients like ORC, because Tax Officials have no control over disbursement decisions. The requested relief likely will not redress the alleged infringement of ORC's constitutional rights. The Court concludes, therefore, that Tax Officials should be dismissed.[2]

For the same reasons, the Court finds that Governor Henry also should be dismissed. The plain language of section 1104.6 states that DHS – not Governor Henry – controls disbursements

---

[2]   In light of this conclusion, the Court need not address Tax Officials' other arguments regarding sovereign immunity and venue.

from the Fund. Although Governor Henry does not challenge redressability in his current motion,[3] this oversight is of no consequence. The Court may consider, sua sponte, ORC's standing as to each defendant. See Rector v. City and County of Denver, 348 F.3d 935, 942 (10th Cir. 2003) ("Standing, however, raises jurisdictional questions and we are required to consider the issue sua sponte to ensure that there is an Article III case or controversy before us." (internal quotation marks omitted) (emphasis in original)). ORC lacks standing as to Governor Henry because a judgment against him would not result in disbursement of government funds to otherwise eligible recipients like ORC.

Director Hendrick, who represents DHS, should remain a defendant in this action, however. Like his co-defendants, Director Hendrick asserts that ORC lacks standing. It appears that he contends that ORC has not suffered injury in fact because ORC has no right to the funds it is requesting. See Dkt. # 136, at 9-10. ORC allegedly has no right to these funds because it has no valid constitutional claims to challenge Oklahoma's decision to fund only those organizations that do not advocate abortion. The Court addresses the sufficiency of ORC's claims in light of Rust v. Sullivan, 500 U.S. 173 (1991), in Part VII infra.

The Court need only briefly address this contention as Director Hendrick misconstrues ORC's requested relief. ORC does not challenge Oklahoma's decision to fund only those organizations that do not advocate abortion. As noted in Hill, 478 F.3d at 1260, ORC challenges only the statutory condition for receipt of state funding to be used for adoption-related activities on a recipient's certification that it does not engage in any – even separately financed – abortion-related

---

[3]  He did, however, raise redressability in his initial motion to dismiss the amended complaint. See Dkt. # 27, at 8; Dkt. # 46.

activities. Contrary to Director Hendrick's (implicit) assertion, ORC alleges an injury in fact that is concrete and actual. ORC applied for and was denied disbursements from the Fund solely because of its separately financed, abortion-related activities.[4]  See Dkt. # 141, Exhibit A. Thus, ORC has standing to assert its claims against Director Hendrick.

### V. The Tax Injunction Act and Ex parte Young

Director Hendrick argues that "this Court should dismiss ORC's remaining claims . . . because the Tax Injunction Act [("TIA")] expressly denie[s] federal courts jurisdiction to hear issues involving a state's tax statutes, and not even the legal fiction of Ex parte Young should be available to a federal court to circumvent Congress' expressed statement of federalism and comity." Dkt. # 136, at 9. Director Hendrick also asks this Court to apply (an interpretation of) the Tenth Circuit's Ex parte Young analysis in Hill, 473 F.3d at 1259-60, and to find that ORC's requested relief is barred under the Eleventh Amendment because it "would affect only the State." Dkt. # 136, at 12.

---

[4]  Director Hendrick facially attacks ORC's claims under Rule 12(b)(1). The Court notes, sua sponte, that the amended complaint states only that ORC "would like to apply for funding," not that ORC has ever done so. See Dkt. # 45, at 6. Thus, the amended complaint would appear to be facially inadequate with respect to ripeness and injury in fact. See Hill, 478 F.3d at 1255 n.20. ORC attaches to its response evidence documenting its injury in fact, i.e., that it applied for disbursements from the Fund in fiscal years 2005, 2006, and 2007. See Dkt. # 141, Exhibit A. Although Director Hendrick does not factually challenge ORC's claims, a court may "look beyond the complaint and has wide discretion to allow documentary and even testimonial evidence" if a movant presents such a challenge. Paper, Allied-Indus., Chem. and Energy Workers Int'l Union v. Continental Carbon Co., 428 F.3d 1285, 1292 (10th Cir. 2005). "[A] court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion [– however –] when resolution of the jurisdictional question is intertwined with the merits of the case." Holt, 46 F.3d at 1003. The merits are intertwined if "resolution of the jurisdictional question requires resolution of an aspect of the substantive claim." Continental Carbon, 428 F.3d at 1292 (internal quotation marks and citation omitted). Here, whether ORC suffered injury by DHS' alleged discriminatory denial of funding does not require resolution of an aspect of ORC's constitutional claims. Thus, the Court may consider ORC's attachments without converting defendant's motion.

According to Director Hendrick, "any relief this Court could possibly award ORC would be the 'functional equivalent' to a claim against the state and would not affect any ORC rights." Id. The Court finds that Director Hendrick's effort to reargue the TIA and sovereign immunity is barred by two rules of practice that limit judicial authority. See Huffman v. Saul Holdings Ltd. P'ship, 262 F.3d 1128, 1133 (10th Cir. 2001) ("The district court's authority . . . [i]s circumscribed by the terms of the mandate and the law of the case doctrine, neither of which is jurisdictional.").

The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Huffman, 262 F.3d at 1132 (internal quotation marks and citation omitted). The doctrine applies if a previous disposition decided the issue in question explicitly or by necessary implication. Proctor & Gamble Co. v. Haugen, 317 F.3d 1121, 1126 (10th Cir. 2003). The doctrine "is intended to prevent continued re-argument of issues already decided, and to preserve scarce court resources – to avoid in short, Dickens's Jarndyce v. Jarndyce syndrome." Copart, Inc. v. Admin. Review Bd., U.S. Dep't of Labor, 495 F.3d 1197, 1200 (10th Cir. 2007) (internal quotation marks and citation omitted). A court may deviate from the law of the case, however, under three "exceptionally narrow" circumstances: (1) when the evidence in a subsequent trial substantially differs; (2) when subsequent controlling authority applies to the court's contrary decision of the law; or (3) when the court's decision was clearly erroneous and would work a manifest injustice. Concrete Works of Colo., Inc. v. City and County of Denver, 321 F.3d 950, 993 (10th Cir. 2003). None of these exceptions applies to Director Hendrick's arguments. See Dkt. # 136, at 8-9.

The Court has already ruled that the TIA does not bar the Court's jurisdiction as to claims five and six. See Dkt. # 72, at 9 ("Because the fifth and sixth claims for relief involve the

12

disbursement of funds rather than the collection of funds, the Court finds that the TIA does not bar the Court's jurisdiction as to them."). Further, on appeal, certain defendants raised this issue only in a footnote. The Tenth Circuit declined to consider "an argument raised in such a perfunctory manner" and deemed the argument waived. Hill, 478 F.3d at 1255 n.21; see also Hardeman v. City of Albuquerque, 377 F.3d 1116, 1131 (10th Cir. 2004). The Court will not re-address this issue on remand. See Concrete Works of Colo., 321 F.3d at 992-93 (holding that the law of the case doctrine "ensures that a party which fails to challenge a ruling in a first appeal does not 'stand better as regards the law of the case than one who had argued and lost.'" (quoting Laffey v. Nw. Airlines, Inc., 740 F.2d 1071, 1089 (D.C. Cir. 1984)).

With respect to Director Hendrick's argument relating to sovereign immunity and Ex parte Young, the Court finds that the mandate rule applies. The mandate rule is an "important corollary of the law of the case doctrine" and provides that a district court must comply strictly with the mandate given by the reviewing court. Huffman, 262 F.3d at 1132 (internal quotation marks omitted). The mandate consists of the appellate court's "instructions to the district court at the conclusion of the opinion, and the entire opinion that preceded those instructions." Haugen, 317 F.3d at 1126. On remand, a district court may consider only those issues which were "not expressly or impliedly disposed of on appeal." Id. (internal quotation marks and citation omitted).

The Court lacks authority to reconsider Ex parte Young's applicability. The Tenth Circuit expressly held that ORC's claims fall within the scope of the Ex parte Young exception to the general rule that citizens are precluded from bringing suits against their own sovereign state. Hill, 478 F.3d at 1262. The Circuit further held that ORC's complaint does not seek the functional equivalent to an impermissible money judgment. Id. at 1261. The fact that the Tenth Circuit left

13

open the question of whether the disbursement of funds pursuant to (pre-judgment) agreed orders constitutes an impermissible form of relief does not negate the finality of the Circuit's conclusion.[5]

Moreover, Director Hendrick's attempt to evade the Circuit's conclusion is misplaced, not to mention somewhat cryptic. Director Hendrick argues that because claims five and six "would affect only the State. . . . any relief this Court could possibly award ORC would be the 'functional equivalent' to a claim against the state and would not affect any ORC rights." Dkt. # 136, at 12. First, Director Hendrick's argument ignores defendants' position on appeal that "claims five and six . . . are directed (at least nominally) against state officials rather than the State of Oklahoma." Id. at 1257. Second, Director Hendrick's casual use of the term "functional equivalent" does not transform his misguided contention into anything other than an endeavor to reargue the applicability of Ex parte Young. The mandate rule precludes such an undertaking.

## VI. Mootness

In late 2005, after the issuance of this Court's decision on the initial motions to dismiss, the Oklahoma Legislature added section 1135.7 to the Vehicle and License Registration Act. Hill, 478 F.3d at 1243. Section 1135.7 permits virtually any group to receive specialty license plates

---

[5]   Again, the Tenth Circuit noted,
should the facts developed in discovery take the case in a direction different from that suggested by the complaint, the trial court remains free to revisit the applicability of the Eleventh Amendment, whether at summary judgment or thereafter. That is, defendants remain free, as discovery progresses, to try to establish facts suggesting that granting ORC the relief it requests would operate to reduce the amount of funds flowing to the state Treasury or otherwise constitute something functionally equivalent to a retrospective judgment. Likewise, we offer no comment on whether any other forms of relief ORC may ultimately seek to add to this suit might or might not be problematic under the Eleventh Amendment.
Id. at 1259.

depicting support for its cause. Id.; see OKLA. STAT. tit. 47, § 1135.7. On appeal, defendants argued (and ORC did not dispute) that this amendment permitted Oklahoma motorists to apply for and receive a speciality plate demonstrating support for abortion rights and even providing funding to abortion-related programs. Id. Defendants argued that these "changed circumstances" mooted the first through fourth claims of the amended complaint. Id.

The Tenth Circuit disagreed. The court held that "[s]imply put, there remains a difference between how Oklahoma treats those who wish to obtain a Choose Life . . . plate, on the one hand, and those who wish to obtain a license plate expressing support for abortion rights, on the other." Id. The Circuit found that Oklahoma law continues to prefer one competing viewpoint over another because "the latter group has to come up with 500 prepaid applications within a specified time frame, while the former group is presumptively grandfathered in." Id. Thus, the Circuit concluded that claims one through four were not moot.[6] Id.

Director Hendrick has repackaged this mootness argument and now asserts it here. Director Hendrick argues that claims five and six are moot because section 1135.7 provides ORC a means to fund its group "in just the way the Choose Life . . . funds produce funds for their organizations." Dkt. # 136, at 12-13. For the same reason (viewpoint preference), Director Hendrick's mootness argument fails here.

---

[6] Further, even though Hill did not discuss mootness with respect to claims five and six, the analysis would seem equally applicable here. The fact that ORC may now or in the future be eligible to receive disbursements from the Oklahoma Treasury does not correct the alleged constitutional infirmity created by the challenged eligibility criteria. Viewpoint preference remains embedded in Oklahoma's special license plate statute, as "a difference [still exists] between how Oklahoma treats those who wish to obtain a Choose Life . . . plate . . . and those who wish to obtain a license plate expressing support for abortion rights . . . ." Hill, 478 F.3d at 1243.

### VII. Sufficiency of Claims

Director Hendrick argues that ORC fails to state claims upon which relief can be granted. Director Hendrick submits that "ORC wants this Court to force the State of Oklahoma to fund their abortion related activities despite the Legislature's clear intent that those funds are not to be used for such activity." Dkt. # 136, at 6. Director Hendrick further submits that the United States Supreme Court's decision in Rust v. Sullivan, 500 U.S. 173 (1991), "clearly indicates that ORC has no valid [c]onstitutional claims to challenge Oklahoma's decision to fund only those organizations that do not advocate abortion." Id. This Court need only briefly address defendant's argument as he mischaracterizes ORC's claims and requested relief.

ORC does not seek to have the State fund its abortion-related activities.[7] See Hill, 478 F.3d at 1360 ("That is, ORC's complaint seeks only to prohibit the State in the future from denying Choose Life Assistance Program funds to organizations like ORC because they also advocate abortion."); see also Dkt. # 140, at 34 ("To be crystal clear, ORC does not challenge the state's ability to 'encourage[] alternative activity deemed in the public interest' through the 'unequal subsidization' of favored and disfavored activities." (quoting Harris v. McRae, 448 U.S. 297, 315 (1980))). ORC seeks, instead: (i) a declaration that conditioning disbursement of state funds on a putative recipient's complete abstention from disfavored speech activities is unconstitutional, so long as the disbursement would not be used to fund such activities; (ii) an injunction prohibiting the continued enforcement of subsections (C)(4) and (D) of section 1146; and (iii) severance of subsections (C)(4) and (D) from the remainder of the statute. ORC challenges the alleged unconstitutional condition imposed by subsections (C)(4) and (D), which provide "no way for ORC

---

[7] ORC also does not dispute that Rust permits the State to make a choice to support adoption rather than abortion-related programs. Hill, 478 F.3d at 1261.

to receive such funding to support its adoption counseling services and still exercise its First Amendment right to speak out about abortion, even using entirely private funds in entirely distinct programs." Hill, 478 F.3d at 1360.  Contrary to Director Hendrick's assertion, Rust does not preclude ORC's claims.  In fact, Rust noted that the Supreme Court has upheld challenges to unconstitutional conditions where the laws "placed a condition on the recipient of the subsidy rather than on a particular program or service, thus effectively prohibiting the recipient from engaging in [constitutionally] protected conduct."  500 U.S. at 197.  The Court concludes, therefore, that ORC states claims upon which relief can be granted.

### VIII.  Motion to Stay

Director Hendrick alternatively requests a stay in this case pending the United States Supreme Court's decision on whether to grant the petition and conditional cross-petition for writ of certiorari.  Dkt. # 136, at 13.  On January 7, 2008, the Supreme Court denied the certiorari petitions. See Dkt. # 143.  Therefore, defendant's alternative motion to stay is moot.

### IX.  Conclusion

**IT IS THEREFORE ORDERED** that Defendants Governor Brad Henry and Department of Human Services Director Howard Hendrick's Motion to Dismiss or in the Alternative to Stay this Case Pending the United State Supreme Court's Decision to Grant Certiorari Review (Dkt. # 136) is hereby **granted** in part, **denied** in part, and **moo**t in part: it is granted as to Governor Brad Henry being dismissed as a party; it is denied as to Department of Human Services Director Howard Hendrick being dismissed as a party; it is moot as to defendants' alternative motion to stay.

**IT IS FURTHER ORDERED** that Defendants Kemp, Johnson and Irby's Motion to Dismiss for Lack of Jurisdiction with Brief (Dkt. # 135) is hereby **granted**. Defendants Kemp, Johnson, and Irby are dismissed as parties to this suit. Director Hendrick is the only remaining defendant.

**DATED** this 26th day of March, 2007.

*[signature]*
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT